# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| GARY A. SPAULDING,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>    Defendant. | NO. C10-1749-MJP-JPD<br><br>REPORT AND RECOMMENDATION |

Plaintiff Gary A. Spaulding appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED.

## I. FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a fifty-two year old man with a ninth-grade education. Administrative Record ("AR") at 573. His past work experience includes employment as a commercial fisherman. AR at 56. Plaintiff filed a claim for DIB

REPORT AND RECOMMENDATION - 1

1 and SSI payment on February 10, 2005, which is also his amended alleged onset date.[1] AR at
2 233. Plaintiff asserts that he is disabled due to degenerative disc disease and hepatitis C. AR
3 at 14, 369.

4 The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 36-
5 37, 40-43. Plaintiff requested a hearing which took place on September 26, 2006. AR at 230-
6 56. On November 21, 2006, the ALJ issued a decision finding plaintiff not disabled and
7 denied benefits based on a finding that plaintiff could perform jobs existing in significant
8 numbers in the national economy. AR at 9-19. After the Appeals Council denied review on
9 May 18, 2007, plaintiff appealed to the U.S. District Court for the Western District of
10 Washington. AR at 4.

11 On February 26, 2008, the undersigned issued a Report and Recommendation
12 remanding the case to the ALJ for further proceedings consistent with his opinion. AR at 314-
13 24. An Order of Remand was issued by the Honorable Richard A. Jones on May 13, 2008.
14 AR at 313. The ALJ held a new hearing on September 11, 2008, at which he heard testimony
15 from plaintiff as well as a vocational expert ("VE"). AR at 569-610. On November 4, 2008,
16 the ALJ issued a second decision finding plaintiff not disabled because there are jobs that exist
17 in significant numbers in the national economy that plaintiff can perform. AR at 294-309. The
18 Appeals Council declined to assume jurisdiction, making the ALJ's second decision the "final
19 decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). AR at 257. On
20 October 28, 2010, plaintiff timely filed the present action challenging the Commissioner's
21 decision. Dkt. 1.

---

[1] The plaintiff amended the alleged onset date at the second hearing. AR at 233.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he

considered the claimant's evidence.
*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Mr. Spaulding bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[2] If he is, disability benefits are denied. If he is not, the

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On November 4, 2008, the ALJ issued a decision finding the following:

1. The claimant has not engaged in substantial gainful activity since February 10, 2004, the application date.

2. The claimant has the following severe impairment: degenerative disc/joint disease of the back; depression; anxiety; and a personality disorder. The claimant has non-severe impairments of substance abuse and hepatitis C.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). The claimant can occasionally lift and/or carry twenty pounds. The claimant can frequently lift and/or carry 10 pounds. The clamant can stand and/or walk (with normal breaks) for a total of about six hours in an eight hour workday. The claimant can push and/or pull unlimitedly. The claimant can occasionally climb ladders, ropes or scaffolds. The claimant can occasionally balance and stoop. The claimant can frequently kneel, crouch or crawl. The claimant must avoid concentrated exposure to hazards (machinery, heights, etc.).

The claimant has the mental capability to: adequately perform the mental activities generally required by competitive, remunerative, unskilled work as follows: understand, remember and carry out simple instructions compatible with unskilled work; the claimant would have average ability to perform sustained work activities (i.e. can maintain attention and concentration; persistence and pace) in an ordinary work setting on a regular and continuing basis (i.e. eight hours a day, for five days a week, or an equivalent work schedule) within customary tolerances of employers rules regarding sick leave and absence. The claimant can make judgments commensurate with the function of unskilled work, i.e., simple work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes all within a routine work setting. The claimant is limited from dealing with the general public as in waiting on customers; incidental contact with the public is not precluded as would occur in a cleaner position.

5. The claimant has no past relevant work.

6. The claimant was born on XXXXX, 1956 and was 47 years old on the date the application was filed, which is defined as a younger individual age 18-49,[3] on the date the application was filed.

---

[3] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

|   |   |   |
|---|---|---|
| 1 | 7. | The claimant has a limited education and is able to communicate in English. |
| 2 |   |   |
| 3 | 8. | Transferability of job skills is not an issue in this case because the claimant does not have past relevant work. |
| 4 | 9. | Considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. |
| 5 |   |   |
| 6 | 10. | The claimant has not been under a "disability," as defined in the Social Security Act, since February 17, 2004, the date the application was filed. |
| 7 |   |   |

AR at 294-309.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ erred at step two?

2. Whether the ALJ erred in evaluating the medical evidence?

3. Whether the ALJ erred in making an adverse credibility determination?

Dkt. 20 at 9-21.

## VII. DISCUSSION

A. <u>The ALJ Erred in Determining Plaintiff's Severe Impairments</u>

　　*1.　Standards for Reviewing Step Two Challenges*

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

REPORT AND RECOMMENDATION - 7

effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

To establish the existence of a medically determinable impairment, the claimant must provide medical evidence consisting of "signs – the results of 'medically acceptable clinical diagnostic techniques,' such as tests – as well as symptoms," a claimant's own perception or description of her physical or mental impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005). A claimant's own statement of symptoms alone is *not* enough to establish a medically determinable impairment. *See* 20 C.F.R. §§ 404.1508, 416.908.

### 2. *Plaintiff's Alleged Neck Impairments*

Plaintiff argues that the ALJ erred at step two of the sequential evaluation process by failing to find that plaintiff's neck impairment constituted a severe impairment. Dkt. 20 at 9. Specifically, plaintiff argues that the ALJ only considered the plaintiff's back impairment and "inexplicably omitted the neck impairment." *Id.* Plaintiff also asserts that the newest October 2007 MRI evidence of the cervical spine[4] "shows significant deterioration . . . and now nerve root involvement in the cervical spine." *Id.* at 10. Plaintiff contends that additional evaluations by his physician, Dr. Houk, demonstrate "limitations in range of motion of the shoulders [and] upper extremities" and "significantly decreased [range of motion] in the neck." *Id.* at 11. Finally, plaintiff argues that the ALJ's finding "that the two MRIs show similar medical findings is not reasonable, because his conclusion relies on opinions of Dr. Goldman

---

[4] The cervical spine is comprised of the cervical vertebrae, "the seven segments of the vertebral column located in the neck." STEDMAN'S MEDICAL DICTIONARY 434630 (27th ed. 2000).

and Dr. Hoskins, and neither of those doctors reviewed or considered the 2007 MRI or compared it to the 2005 MRI." Dkt. 26 at 2.

The Commissioner argues that "[t]he ALJ was not required to find [p]laintiff's neck impairment a severe impairment because the evidence does not show that it affected his ability to perform basic work activities." Dkt. 23 at 4. Specifically, the Commissioner contends that "even [e]vidence from [p]laintiff's treating physicians disprove his argument that the differences between the MRIs indicated . . . [a] neck impairment" that impacted the plaintiff's ability to perform work activities. *Id.* at 6. The Commissioner notes that plaintiff's medical records from 2006 and 2007 only list the plaintiff's back impairment as a diagnosis, but no neck impairment. *Id.* at 5.

At step two, the ALJ did not discuss plaintiff's alleged neck impairment except to discuss the MRI performed in 2005:

> On October 21, 2005 an MRI of the cervical spine was performed that revealed disc bulging at C4 – 5, C5 – 6 and C6 – 7, resulting in neural foraminal narrowing. Specifically, at C4 – 5 there was moderate neural foraminal narrowing. At C5 – 6 there was mild canal and bilateral neural foraminal narrowing, at C6 – 7 there was a mild right and moderate left sided neural foraminal narrowing and at C7 – T1 there was mild right-sided neural foraminal narrowing.

AR at 300. The ALJ then noted that the "updated MRI, performed on October 26, 2007, showed similar findings" to the October 2005 MRI results. AR at 300. The ALJ did not make any other findings regarding plaintiff's alleged neck impairment at step two.

However, at step three, the ALJ noted that during a range of motion evaluation by Dr. Shaw, plaintiff "had some [neck] restrictions in bending forward and back as well as laterally." AR at 305. The ALJ also stated that "[t]he cervical spine imaging determined only mild to moderate findings." AR at 305. To support this finding, the ALJ cited to the 2005 MRI and

REPORT AND RECOMMENDATION - 9

Dr. Hoskins' December 2007 opinion. AR at 412, 446. Specifically, the ALJ noted that Dr. Hoskins' opinion was "based on an entire review of the record," and stated that "the imaging of the claimant's cervical and lumbar spine showed degenerative disk disease of modest degree and significantly less than needed to validate the degree of disability alleged by the claimant." AR at 306.

The Appeals Council "found no reason . . . to assume jurisdiction." AR at 257. Although plaintiff submitted additional documentation of his alleged neck injury, the Appeals Council held that the evidence was not "material to the period under review that ended with the issuance of the Administrative Law Judge decision." AR at 258-59. *See also* 20 C.F.R. § 404.970 ("If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."). The Appeals Council further stated that it was "returning [the] evidence if claimant wishes to file a new application and given a protected filing date." AR at 258-59. The additional documentation included chart notes and evidence of plaintiff's neck surgery for a "C5-6 anterior cervical disketomy and fusion with donor bone graft and anterior plating." AR at 293. *See also* AR at 264-90. In determining that the evidence was not material to the period under review, the Appeals Council noted that the "MRI dated October 2007 . . . was reviewed by Dr. Hoskins, a medical expert for the State agency, and considered in Dr. Hoskins' assessment of a light residual functional capacity that was relied upon by the ALJ." AR at 258.

The ALJ erred at step two. Contrary to the Appeals Council's assertion, Dr. Hoskins did not review the 2007 MRI, and his opinion about the plaintiff's impairments was only based on the October 2005 MRI. *See* AR at 306, 446. As noted by the plaintiff, and conceded by the

Commissioner, the MRI performed in 2007 was not part of the plaintiff's record until September 2008, nine months after Dr. Hoskins completed his evaluation. AR at 517. *See also* Dkt. 26 at 4; Dkt. 23 at 14. Thus, Dr. Hoskins did not have the complete record that was before the ALJ when he indicated that the plaintiff's neck pain exceeded the objective findings. AR at 446.

Furthermore, although an ALJ "need not discuss *all* evidence presented," the ALJ must explain why "significant probative evidence has been rejected." *Vincent on Behalf of Vincent v. Heckler*, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original). Results from the 2007 MRI indicate:

1. At C4-C5, there is a right foraminal spondylotic disk protrusion resulting in moderate narrowing of the right neural foramina with abutment of the existing right cervical nerve root.
2. At C6-C7, there are biforaminal spondylotic disk protrusions, which are resulting in moderate narrowing of the neural foramina bilaterally with abutment of the existing cervical roots bilaterally.
3. At C7-T1, there is a shallow midline disk protrusion resulting in a mild central canal stenosis.
4. No cord compression.

AR at 518. The Court is persuaded that MRI results indicating "abutment of the existing right cervical nerve root" and "abutment of existing cervical roots bilaterally" constitute "probative evidence" bearing on whether or not the plaintiff's neck impairment should be considered severe at step two.

In addition, the record reflects other evidence that was part of the record before the ALJ that bears on whether or not the plaintiff's neck impairment is severe. Specifically, testing performed between 2006 and 2008 indicate changes in the claimant's neck range of motion for extension, flexion, rotation, and lateral bending. *See* AR at 426, 497, 503, 509. Furthermore, Dr. Houk and Dr. Claypool completed interrogatories in which they both opined that the

claimant met a listing 1.04(a) for disorders of the spine. AR at 512, 515. Because the ALJ failed to evaluate plaintiff's neck impairment at step two, the ALJ erred.

Accordingly, this matter must be reversed and remanded for further proceedings. On remand, the ALJ shall discuss plaintiff's alleged neck impairment at step two. The ALJ shall further develop the record, if necessary, such as considering the additional evidence submitted to the Appeals Council by plaintiff, as this evidence is material to the period under review during the next hearing.

### B. The ALJ Erred in His Evaluation of the Medical Evidence

#### *1. Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th

Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

In this case, plaintiff argues that the ALJ erred in his assessment of the opinion of non-examining state agency medical consultant Dr. Robert Hoskins, as well as the opinions of plaintiff's treating physicians, Dr. David L. Goldman and Dr. David Claypool. Dkt. 20 at 16-21.

### 2. *Dr. Hoskins*

Dr. Hoskins is a non-examining state agency medical consultant who completed a review of the claimant's record on December 6, 2007. AR at 439-46. In evaluating claimant's neck pain, Dr. Hoskins noted that "data in this file image documents [cervical spine] . . . [degenerative disc disease] of modest degree and [is] quite less than sufficient to validate the degree of disability alleged." AR at 446. Dr. Hoskins also noted that the claimant could lift or carry 20 pounds occasionally, lift or carry 10 pounds frequently, stand or walk for six hours in an eight-hour workday, sit for six hours in an eight-hour workday, and push or pull without limitation. AR at 440.

The ALJ "strongly considered the evaluation of [Dr. Hoskins]." AR at 306. The ALJ stated that "[Dr.] Hoskins . . . performed the Physical Residual Functional Capacity Assessment, based on an entire review of the record." AR at 306. The ALJ also noted that Dr. Hoskins "determined that the imaging of the claimant's cervical and lumbar spine showed degenerative disk disease of modest degree and significantly less than needed to validate the degree of disability alleged by the claimant." AR at 306.

Plaintiff argues that the ALJ inappropriately relied upon Dr. Hoskins' December 2007 opinion. Dkt. 20 at 16. Specifically, plaintiff asserts that Dr. Hoskins' opinion did not include the latest October 2007 MRI evidence. *Id.* Plaintiff asserts that although the Appeals Council stated that Dr. Hoskins' opinion was based on the October 2007 MRI, this assertion is incorrect because plaintiff's file did not include the October 2007 MRI report until September 2008, nine months after Dr. Hoskins issued his opinion. *Id.* at 19-20.

The Commissioner responds that "[a]lthough the ALJ noted that Dr. Hoskins reviewed the entire record, there is no support for the argument that the ALJ assumed Dr. Hoskins

reviewed the 2007 MRI." Dkt. 23 at 14. The Commissioner goes on to note that "[t]he cover letter submitted with the 2007 MRI is dated September 2008, almost nine months after Dr. Hoskins' review," and "[i]t is reasonable to assume that the ALJ noted the date of receipt, and was aware that such medical evidence was submitted after state agency review." *Id.* Finally, the Commissioner notes that the "Appeals Council's assumption [that Dr. Hoskins reviewed the 2007 MRI] did not factor into the ALJ's evaluation of the evidence." *Id.* at 14.

The ALJ erred in evaluating Dr. Hoskins' opinion. As argued by the claimant, the ALJ "implie[d] that Dr. Hoskins reviewed the . . . October 2007 MRI." Dkt. 20 at 19. The ALJ stated unequivocally that Dr. Hoskins' opinion was "based on an entire review of the record." AR at 306. The ALJ went on to note that Dr. Hoskins "determined that the imaging of the claimant's cervical and lumbar spine showed degenerative disk disease of modest degree and significantly less than needed to validate the degree of disability alleged by the claimant." AR at 306. As noted above, Dr. Hoskins' opinion was not based on the entire record. Rather, Dr. Hoskins' opinion about the MRI data could only be based on the older MRI results, not the October 2007 MRI data as the ALJ implied. Thus, the ALJ erred. On remand, the ALJ is directed to reevaluate Dr. Hoskins' opinion in light of the more recent evidence.

### 3. Dr. Goldman

Dr. Goldman is a treating neurosurgeon who saw the claimant in 2004, 2005, and 2008. AR at 523, 526, 530-31.[5] In 2004, Dr. Goldman did not discuss the claimant's alleged neck pain. AR at 530-31. In 2005, Dr. Goldman only indicated that the claimant "was given a

---

[5] Dr. Goldman also treated the claimant in 2009 regarding the claimant's surgery for "an anterior cervical disketomy and fusion at the C5-6 level." AR at 290. However, the 2009 records were not before the ALJ when his decision was rendered in November 2008, and the Appeals Council did not make it part of the record. Thus, the Court does not consider the 2009 treatment record as part of its evaluation of the ALJ's decision.

program of back and neck exercises," but he did not discuss the claimant's alleged neck pain further. AR at 526-27. In 2008, Dr. Goldman saw the claimant for a consultation. AR at 523. However, because the claimant forgot his 2007 MRI scans at that visit, Dr. Goldman was unable to complete the consultation regarding his alleged back and neck pain. AR at 523. Nevertheless, the ALJ relied upon Dr. Goldman's opinion to rebut other treating physician opinions, noting that "Dr. Goldman stated the claimant did not have nerve root compression, based on the recent MRI results." AR at 307.

Plaintiff argues that the ALJ improperly relied upon Dr. Goldman's 2005 finding that "there was no nerve root compression" in plaintiff's neck. Dkt. 20 at 17. Plaintiff notes that "Dr. Goldman's conclusion that there was no nerve root compression was based only on the October 2005 MRI evidence . . . not the more recent October 2007 MRI evidence." *Id.* at 18. Plaintiff asserts that "there were significant changes between the October 2005 cervical MRI and the October 2007 cervical MRI[,] namely [that the 2007 MRI] . . . does show that the cervical disc herniations now abut the nerve roots at multiple levels." *Id.*

The Commissioner argues that the ALJ properly evaluated Dr. Goldman's medical opinion. Dkt. 23 at 13. The Commissioner relies upon Dr. Goldman's 2005 consultation to argue that plaintiff does not have nerve root compression. *Id.* The Commissioner also notes that, although plaintiff argues that the 2007 MRI establishes nerve root compression, "[t]his argument is unfounded." *Id.* The Commissioner argues that "[p]laintiff appears to equate nerve abutment with nerve compression," but "[t]he ALJ did not equate abutment with compression." *Id.*

The ALJ erred in relying upon Dr. Goldman's 2005 opinion that the "claimant did not have nerve root compression, *based on the recent MRI results*." AR at 307 (emphasis added).

As noted above, Dr. Goldman did not have an opportunity to evaluate the most recent 2007 MRI results. Thus, the ALJ erred in relying upon Dr. Goldman's 2005 opinion to rebut other treating physicians' opinions about the 2007 MRI data. Furthermore, it is unclear whether the 2007 MRI establishes evidence of nerve root compression, which is one of the requirements a claimant must satisfy to meet listing 1.04 for disorders of the spine.[6] Although the 2007 MRI results indicate "[n]o cord compression," the results also indicate "abutment of the existing cervical roots bilaterally" at C6-C7 and "abutment of the existing right cervical nerve root" at C4-C5. AR at 518. It is unclear from the record whether the ALJ equated abutment of cervical nerve root compression with cord compression, and the ALJ should clarify his findings on remand.

Thus, on remand, the ALJ shall reevaluate Dr. Goldman's opinion in light of the 2007 MRI. The ALJ shall further develop the record regarding plaintiff's allegations that the 2007 MRI reveals evidence of nerve root compression, if necessary. Finally, the ALJ shall consider any additional evidence submitted by the plaintiff, including Dr. Goldman's treatment records regarding the claimant's 2009 surgery for an anterior cervical disketomy and fusion at the C5-6 level. *See* AR at 271, 290, 293.

### 4. Dr. Claypool

Dr. Claypool is a treating physician who saw the claimant on numerous occasions for back pain and medication refills. *See* 403-10, 486-91. Dr. Claypool also completed a written interrogatory, noting that the claimant meets a listing for disorders of the spine. AR at 515. In

---

[6] A claimant can satisfy listing 1.04, disorders of the spine, by establishing, in part, "evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." AR at 515.

2008, Dr. Claypool noted that the claimant's medical condition, which impairs him from working, would persist, "regardless of the patient's use or non-use of drugs or alcohol." AR at 521. To support his opinion, Dr. Claypool referred to the claimant's MRIs, including the MRI performed in 2007. AR at 517-21.

Plaintiff asserts that the ALJ inappropriately disregarded Dr. Claypool's "interrogatory opinion that [p]laintiff's impairments meet or equal Listing 1.04." Dkt. 20 at 17. Plaintiff argues that the ALJ disregarded this testimony in favor of Dr. Goldman's 2005 opinion that "that [p]laintiff did not have nerve root compression" as required for a Listing 1.04. *Id.* Plaintiff contends that this was error because Dr. Goldman's 2005 opinion was based on the October 2005 MRI evidence, not the October 2007 MRI evidence upon which Dr. Claypool based his opinion. *Id.* at 18.

The Commissioner responds that the ALJ properly rejected Dr. Claypool's written interrogatory because "[t]he ALJ properly concluded that Dr. Claypool was unfamiliar with the criteria requirements for listings." Dkt. 23 at 13. The Commissioner asserts that plaintiff "did not have objective evidence to establish all of the criteria of the listing." *Id.* Thus, "[t]he ALJ did not give Dr. Claypool's opinion much weight." *Id.*

The ALJ noted that he did not "give [Dr. Claypool's] opinion much weight because the objective evidence does not support Dr. Claypool's conclusion" that the claimant's neck and back pain would meet or equal a listing. AR at 307. Specifically, the ALJ relied upon Dr. Goldman's 2005 examination and noted that "Dr. Goldman stated the claimant did not have nerve root compression, based on the recent MRI results." AR at 307. In addition, the ALJ noted that Dr. Claypool's "finding is inconsistent with the other opinions in the record,

1  particularly the opinions from Dr. Shaw, Dr. Houk and the State, which found the claimant

2  could perform some level of work." AR at 307.

3  The ALJ did not provide specific and legitimate reasons for rejecting Dr. Claypool's

4  opinion that the claimant met or exceeded a listing. Although it is not entirely clear what

5  "State" evidence the ALJ relied upon, the Court presumes that the ALJ is referring to Dr.

6  Hoskins' opinion. However, as noted above, the Court has directed the ALJ to reevaluate Dr.

7  Hoskins' opinion in light of the 2007 MRI data. Thus, the ALJ did not appropriately rely on

8  Dr. Hoskins to reject Dr. Claypool's opinion.

9  Moreover, the remaining doctors' opinions are insufficient to support the ALJ's

10 conclusion. Dr. Shaw last saw the claimant in 2005. AR at 545. In contrast, Dr. Claypool

11 formed his opinion that the claimant meets or exceeds a listing based on the 2007 MRI and

12 more recent examinations. AR at 515. Without more, Dr. Shaw's 2005 opinion does not

13 provide a legitimate reason for rejecting Dr. Claypool's more recent opinion. In addition, the

14 record does not clearly reflect that Dr. Houk found that "the claimant could perform some level

15 of work." AR at 307. Rather, the record reflects that Dr. Houk, in his latest opinion, also

16 found that the claimant met a listing of the spine. AR at 512. Thus, Dr. Houk's opinion also

17 does not provide a legitimate reason for rejecting Dr. Claypool's opinion that the claimant met

18 a listing.

19 Finally, the ALJ erred in rejecting Dr. Claypool's opinion based upon Dr. Goldman's

20 assertion that the claimant did not have nerve root compression. As previously noted, the

21 plaintiff correctly asserts that "Dr. Goldman's opinion was based only on the 2005 MRI

22 evidence," and not the "more recent MRI results" as stated by the ALJ. AR at 526-27. As a

23 result, the ALJ shall reevaluate Dr. Claypool's opinion on remand.

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

DATED this 18th day of October, 2011.

JAMES P. DONOHUE
United States Magistrate Judge